1                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF MISSISSIPPI
2
   UNITED STATES OF AMERICA,        )
3                                   )
                 Plaintiff,         )          CASE NO. 4:15CR130
4                                   )
                 vs.                )
5                                   )
   ANDRE KIRKLAND,                  )
6                                   )
                 Defendant.         )
7  _____


8
            CHANGE OF PLEA AS TO COUNT 1 OF THE INDICTMENT
9            BEFORE DISTRICT JUDGE MICHAEL P. MILLS
               WEDNESDAY, MAY 4, 2016; 2:00 P.M.
10                  OXFORD, MISSISSIPPI

11 FOR THE GOVERNMENT:

12      United States Attorney's Office
        DAVID H. FULCHER, ESQ.
13      501 East Court Street, Suite 4.430
        Jackson, Mississippi  39201
14
   FOR THE DEFENDANT:
15
        Percy Law Firm, PLLC
16      LEROY D. PERCY, ESQ.
        501 Heritage Drive, Suite 127
17      Post Office Box 2549
        Oxford, Mississippi 38655
18
        Freeland & Freeland
19      JOYCE M. FREELAND, ESQ.
        Post Office Box 269
20      Oxford, Mississippi  38655-0269

21
        Proceedings recorded by mechanical stenography, transcript
22 produced by computer.

23
            RITA DAVIS YOUNG, FCRR, RPR, CSR #1626
24          FEDERAL OFFICIAL COURT REPORTER
            911 JACKSON AVENUE EAST, SUITE 369
25             OXFORD, MISSISSIPPI 38655

1  (CALL TO ORDER OF THE COURT)

2    THE COURT:  Mrs. Pennebaker, would you call the

3 docket.

4    THE COURTROOM DEPUTY:  Court calls Cause No.

5 4:15CR130, United States of America v. Andre Kirkland.  This is

6 a change of plea as to Count 1 of the indictment.

7    THE COURT:  Who do we have from the Government?

8    MR. FULCHER:  Your Honor, David Fulcher on behalf of

9 the Government.

10    THE COURT:  All right.  Anyone for the defense?

11    MR. PERCY:  Roy Percy, Your Honor; and I have

12 Mr. Kirkland here with me.

13    THE COURT:  All right.

14  Anyone from probation?

15    MR. TOLLISON:  Greg Tollison, Your Honor.

16    THE COURT:  Are you ready to proceed, Mr. Percy?

17    MR. PERCY:  Yes, Your Honor.

18    THE COURT:  If you would come forward, please.

19  (PARTIES COMPLYING)

20    THE COURT:  You want to administer the oath.

21  (OATH ADMINISTERED BY THE COURTROOM DEPUTY)

22    THE COURT:  All right.  And is this Mr. Andre

23 Kirkland?

24    THE DEFENDANT:  Yes.

25    THE COURT:  And I believe, on a previous date, we had

1  begun the change of plea; and I had recessed.

2              MR. PERCY:  Correct.

3              THE COURT:  And we will now begin again, and I'll ask

4  you the same questions.  Do you understand that you are now

5  under oath; and, if you answer any of my questions falsely,

6  your answers may later be used against you in another

7  prosecution for perjury or making false statements?

8              THE DEFENDANT:  Yes.

9              THE COURT:  And I am told that you wish to enter a

10 plea of guilty to Count 1 of the indictment.  Is that correct?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  And, before taking your plea, there are a

13 number of questions I must ask you.  If, at any time, you don't

14 understand a question or you wish to consult with your

15 attorney, you let me know.  Okay?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  What is your full name?

18             THE DEFENDANT:  Andre Kirkland.

19             THE COURT:  How old are you?

20             THE DEFENDANT:  Fifty-five.

21             THE COURT:  How far did you go in school?

22             THE DEFENDANT:  I got an associate in nursing.

23             THE COURT:  And have you been treated recently for

24 any mental illness?

25             THE DEFENDANT:  Just medication for mild depression

1 maybe a year ago, you know.

2          THE COURT:  Okay.  What about addiction to narcotic

3 drugs?

4          THE DEFENDANT:  No more than prescription.

5          THE COURT:  Okay.  Do you think you understand what's

6 happening here today?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Are you currently under the influence of

9 any medication or alcoholic beverage?

10          THE DEFENDANT:  Just the medication I'm on.

11          THE COURT:  Does it affect your ability to understand

12 what you're doing?

13          THE DEFENDANT:  No, sir.

14          THE COURT:  You think you understand what you're

15 doing?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Mr. Percy, you've talked with your client

18 today and earlier, I presume.  Do you have any questions about

19 his competency to enter a plea at this time?

20          MR. PERCY:  No, Your Honor.

21          THE COURT:  Does the Government have any question as

22 to Mr. Kirkland's competency to enter a plea at this time?

23          MR. FULCHER:  We have no such questions, Your Honor.

24          THE COURT:  All right.  Well, I find that

25 Mr. Kirkland is competent to enter a plea.  Have you received a

1  copy of the indictment pending against you in this case?

2          THE DEFENDANT:  Yes.

3          THE COURT:  And have you fully discussed those

4  charges and the case in general with Mr. Percy as your

5  attorney?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Are you fully satisfied with the counsel,

8  representation, and advice given to you in this case by your

9  attorney?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Has anybody attempted in any way to force

12  you to plead guilty?

13          THE DEFENDANT:  No, sir.

14          THE COURT:  Are you pleading guilty of your own free

15  will because you are guilty?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Do you understand you have the right to

18  plead not guilty and to persist in that plea?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Do you understand that, under the

21  Constitution and the laws of the United States, you're entitled

22  to a trial by jury?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Do you understand, at trial, you would be

25  presumed innocent; and the Government would be required to

1   prove you guilty beyond a reasonable doubt; and you would not

2   be required to prove your innocence?

3         THE DEFENDANT: Yes.

4         THE COURT: Do you further understand that, in the

5   course of the trial, the witnesses for the Government would

6   have to come into court and testify in your presence; your

7   attorney could cross-examine the witnesses for the Government;

8   and he could also call other witnesses to testify on your

9   behalf?

10        THE DEFENDANT: Yes, sir.

11        THE COURT: Are you aware that if you wished to

12   testify yourself in your own defense you would have that right

13   to do so, but if you chose not to testify no inference or

14   suggestion of guilt would be drawn by you so choosing?

15        THE DEFENDANT: Yes.

16        THE COURT: If you plead guilty here today and if I

17   accept your plea, do you understand you're going to waive your

18   right to trial and the other rights I just discussed with you?

19        THE DEFENDANT: Yes, sir.

20        THE COURT: And that means there will not be a trial,

21   and I will enter a judgment of guilty and sentence you on the

22   basis of your guilty plea after considering the Presentence

23   Report.

24        THE DEFENDANT: Yes, sir.

25        THE COURT: Having discussed these rights with you,

1  is it still your desire to plead guilty to Count 1 of the

2  indictment?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  What's he charged with in Count 1,

5  Mr. Fulcher?

6            MR. FULCHER:  Your Honor, the defendant is charged,

7  in Count 1, with conspiracy to commit health care fraud in

8  violation of Title 18, United States Code, Sections 1347 and

9  1349.

10            THE COURT:  All right.  Are you aware that's what

11  you're charged with?

12            THE DEFENDANT:  Yes.

13            THE COURT:  Before you could be found guilty of this

14  charge, the Government would have to prove certain elements

15  against you beyond a reasonable doubt.

16      Mr. Fulcher, will you read these elements into the record,

17  please?

18            MR. FULCHER:  Yes, sir.  The elements of the offense

19  of health care fraud, as set forth in Title 18, United States

20  Code, Section 1347, are as follows:  First, that the defendant

21  knowingly and willfully executed, or attempted to execute, a

22  scheme or artifice to defraud a health care benefit program; or

23  that the defendant knowingly and willingly executed, or

24  attempted to execute, a scheme or artifice to obtain money and

25  property from a health care benefit program by means of false

1    and fraudulent pretenses, representations, or promises as

2    charged in the indictment.

3         And, second, that the defendant acted willfully, that is,

4    with the intent to defraud a health care benefit program.  As a

5    matter of law, the Medicare and Medicaid programs are health

6    care benefit programs for purposes of this statute.

7         Under Title 18, United States Code, Section 1349, the

8    elements of the offense of conspiracy to commit the offense of

9    health care fraud are as follows:  First, that two or more

10   persons, in some way or manner, agreed to try and accomplish a

11   common and unlawful plan to commit health care fraud as charged

12   in the indictment.

13        And, second, that the defendant knew the unlawful purpose

14   of the plan and willfully joined it.  In a conspiracy, there is

15   an agreement between two or more persons to join together to

16   accomplish some unlawful purpose.

17        It's a kind of partnership in crime in which each member

18   becomes the agent of every other member, and a person may be a

19   conspirator even without knowing all the details of the

20   unlawful plan or the names and identities of all of the other

21   alleged conspirators.

22        So regardless of the role that the defendant may have

23   played, if he had a general understanding of the unlawful

24   purpose of the plan and willfully joined in the plan on at

25   least one occasion, then that is sufficient for the Government

1  to have proven the offense of conspiracy to commit health care

2  fraud.

3         THE COURT:  All right.  Thank you.

4     Mr. Kirkland, do you have any questions about this charge?

5         THE DEFENDANT:  No, sir.

6         THE COURT:  What are the maximum penalties he could

7  be sentenced to, Mr. Fulcher?

8         MR. FULCHER:  Your Honor, the maximum penalties are a

9  term of imprisonment of not more than 10 years, a fine of not

10  more than $250,000; supervised release of not more than three

11  years; and a special assessment of $100.

12         THE COURT:  Do you understand these penalties?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Has there been a plea agreement entered

15  into?

16         MR. FULCHER:  There has, Your Honor.

17         THE COURT:  Would you state into the record the

18  substance of the plea agreement, please?

19         MR. FULCHER:  Yes, Your Honor.  Your Honor, first --

20  and, so that the record is clear on this issue, there have been

21  prior plea negotiations that have occurred in this case.  All

22  of the prior plea agreements and plea supplements have been

23  voided, and there is a new plea agreement that was executed as

24  of May 3rd, 2016.  It was formalized with the signatures of the

25  defendant and counsel today in court, along with the plea

1    supplement.

2         The entire agreement between the Government and the

3    defendant is contained in these two written documents, the plea

4    agreement and the plea supplement.  And my recitation here is

5    merely to highlight some of the major terms, as the Court has

6    indicated.

7         The plea agreement calls for the defendant to plead guilty

8    to Count 1 of the indictment charging him with the crime of

9    conspiracy to commit health care fraud and the commission of

10   health care fraud.

11        The plea agreement includes provisions that notify the

12   defendant of the maximum possible sentence and penalties and,

13   also, recites that the defendant understands that he will be --

14   that the U.S. Sentencing Guidelines are advisory; but they will

15   be a part of the Court's calculation.  And he specifically

16   acknowledges that he's not relying upon anyone's calculation of

17   a particular guideline range for the offense for which he is

18   pleading guilty.

19        The defendant also has obligated himself to certain

20   financial obligations.  This includes that he agrees to

21   complete a Department of Justice Financial Statement and

22   provide the same to the United States Attorney's Office.

23        He also has agreed, as set forth in Paragraph 6, that he

24   understands and agrees that he is prohibited from transferring

25   or liquidating any and all assets held or owned by him as of

1  the date that the plea agreement is signed, which is today.

2  And he understands and agrees that an unapproved transfer or

3  liquidation of any assets shall be deemed a fraudulent transfer

4  or liquidation.

5     Paragraph 8 contains several waivers that the defendant

6  has agreed to.  The defendant, in addition to waiver of the

7  constitutional rights and other rights that the Court has

8  already advised the defendant of, has also agreed to waive the

9  right to appeal the conviction in this case on any ground

10  whatsoever.

11     He agrees to waive the right to contest the conviction in

12  any postconviction proceedings, including, but not limited to,

13  any proceeding under Title 28, United States Code, Section

14  2255, or any type of proceeding claiming double jeopardy or

15  excessive penalty.

16     He's also waiving any right to seek attorney's fees and/or

17  costs under the Hyde Amendment.  He's waiving any rights,

18  directly or indirectly, to request any information concerning

19  this case, either under the Freedom of Information Act or the

20  Privacy Act or by any other means.

21     And he acknowledges and agrees that factual issues

22  regarding sentencing will be resolved by the sentencing judge

23  under a preponderance of the evidence standard, and that he's

24  waiving any right to a jury determination of these sentencing

25  issues.

1      As I've mentioned, the complete agreement is set forth in

2   the written documents titled the "Plea Agreement" and the "Plea

3   Supplement."  With each of these, there's a recitation where

4   the defendant has acknowledged that the agreement -- the plea

5   agreement and the plea supplement have been read by, or to, the

6   defendant, explained to the defendant by his attorney,

7   understood by the defendant, voluntarily accepted by the

8   defendant, and agreed to and accepted by the defendant.

9      With regard to the plea supplement, if I may, Your Honor,

10  there are -- ordinarily, the plea supplement, of course, is not

11  typically mentioned in open court.  However, there are --

12  there's a provision in there that I feel certain that the Court

13  is aware of, and that is that there is a conditional acceptance

14  provision under 11(c)(1)(C) that the defendant has agreed to.

15  So this plea agreement and plea supplement are subject to

16  acceptance by the Court.

17     And there is, also, an agreement by the Government in the

18  plea supplement not to seek forfeiture of the residence where

19  the defendant and his wife reside, which is at 1517 Ferris

20  Drive in Cleveland, Mississippi.  Those are the major terms of

21  the plea agreements and two items that I wanted to highlight

22  for the Court from the plea supplement.

23         THE COURT:  All right.  Thank you.

24     Mr. Kirkland, you've heard the U.S. Attorney state his

25  understanding of the agreement that you entered into with the

1  Government.  Did he accurately state it as you understand it to

2  be?

3           THE DEFENDANT:  Yes, sir.

4           THE COURT:  And is that your understanding?

5           MR. PERCY:  Yes, Your Honor.

6           THE COURT:  All right.  And I'm going to accept this

7  at this time.  And I don't -- I don't see any reason not to.

8  It looks fairly negotiated and doesn't constrain the Court

9  unduly.  So if you have the originals, you can enter them at

10 this time, the supplement and the plea agreement.

11      Mr. Kirkland, do you understand that the offense to which

12 you're pleading guilty is a felony; and, if your plea is

13 accepted, you will be adjudged guilty and such adjudication may

14 deprive you of valuable civil rights, such as the right to

15 vote, the right to hold public office, the right to serve on a

16 jury, and the right to possess any kind of firearm?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  And the U.S. Sentencing Commission has

19 issued guidelines for judges to follow.  These guidelines are

20 advisory.  Have you and Mr. Percy talked about how the

21 sentencing guidelines might apply to your case?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  And I'm aware of the agreement that

24 you've made with the Government in the plea agreement and in

25 the supplement, so any sentence that I make will be subject to

1   the agreement that you have with the Government.

2        But do you understand that the Court will not be able to

3   determine the guideline sentence for your case until after the

4   Presentence Report has been completed, and you and the

5   Government have had an opportunity to challenge the reported

6   facts and the application of the guidelines recommended by the

7   probation officer; and the sentence imposed may be different

8   from any estimate your attorney may have given you?

9        THE DEFENDANT:  Yes.

10        THE COURT:  And do you understand that, after your

11   guideline range has been determined, the Court has the

12   authority to depart from the guidelines and impose a sentence

13   that is more severe or less severe than the sentence called for

14   by the guidelines but subject to your plea agreement?

15        THE DEFENDANT:  Yes.

16        THE COURT:  Do you understand that parole has been

17   abolished; and, if you're sentenced to prison, you will not be

18   released on parole?

19        THE DEFENDANT:  Yes.

20        THE COURT:  And do you understand that, under some

21   circumstances, you or the Government may have the right to

22   appeal any sentence that I impose?

23        THE DEFENDANT:  Yes.

24        THE COURT:  What is the Government's evidence against

25   Mr. Kirkland?

1          MR. FULCHER:  Your Honor, if this case were to

2   proceed to trial, the Government would prove the following

3   beyond a reasonable doubt:  The Government would show that,

4   during the time period set forth in the indictment, that is,

5   from approximately September 16th, 2010, to February 28th,

6   2014, that Revelation Hospice and Andre Kirkland were knowingly

7   enrolling Medicaid and Medicare recipients who were not

8   eligible for hospice care.  And, in doing so, they were

9   enrolling these recipients falsely into the Medicare and

10  Medicaid program as hospice patients.

11         So we would show the following through recipient

12  interviews, primary care physician interviews, patient chart

13  and medical reviews, and bank records and statements:

14  Specifically, the evidence would show that Andre Kirkland

15  personally helped recruit and enroll non-hospice eligible

16  Medicaid and Medicare recipients into Revelation Hospice.

17         Kirkland, as a registered nurse, and Revelations' Director

18  of Nursing, personally admitted non-hospice appropriate

19  Medicaid and Medicare recipients into Revelation and deceived

20  the patients about the true nature of the services in which

21  they were being enrolled.

22         As part of this deception, many patients unknowingly

23  signed do-not-resuscitate forms, along with undated hospice

24  revocation forms.  Kirkland would later use the revocation

25  forms to discharge patients from Revelation Hospice without the

1  patient's knowledge.

2      Andre Kirkland also personally paid Dr. Walter Gough an

3  amount of money above and beyond his contracted monthly medical

4  director's salary.  Kirkland was a 50-percent owner of

5  Revelation Hospice and was involved in the day-to-day

6  operations -- clinical operations of the hospice.

7      Kirkland signed the CMS 855 Medicare Provider Enrollment

8  Application.  Kirkland is listed on the Medicaid provider

9  documents as the contact person.  And, as a result, the

10 Mississippi Medicaid program paid Revelation Hospice a total of

11 $66,171.43.  The Medicare program paid Revelation Hospice a

12 total of $7,293,166.41.

13     After a medical review, there was a 100 percent denial of

14 all claims paid for the four Revelation Hospice Medicaid

15 recipients that were reviewed.  And, after a medical review,

16 there was a 100 percent denial of claims of the 30-patient

17 Medicare patient sample.

18     Revelation Hospice had an average live discharge rate,

19 that is, patients who were discharged from hospice were alive

20 at the time of their discharge, of 93.3 percent.  2010 data, by

21 comparison, shows that the national average for the live

22 discharge rate was 18.2 percent.  And the Mississippi average

23 was 40.5 percent.

24     Andre Kirkland was the Director of Nursing for Revelation.

25 He was responsible for hospice admissions, the supervision of

1  all nursing staff; and he also treated patients in the field.

2  According to patient interviews, Kirkland deceived patients

3  about the true nature of the services they were being enrolled

4  in and never told the patients that they were terminally ill.

5      Andre Kirkland obtained signed, but undated, hospice

6  revocation forms from the patients at the time of their

7  admission.  These were later used by Revelation Hospice to

8  discharge patients without the patient's knowledge.

9      As one example, Kirkland admitted a patient, who is

10  identified in the indictment under the initials SP, who was a

11  29-year-old pregnant female.  And this patient's primary care

12  physician stated that the patient was not terminally ill and

13  was nowhere near hospice appropriate.  And that particular

14  patient is referenced in Paragraph 28A of Count 1 of the

15  indictment.

16      During the relevant time period, Revelation Hospice billed

17  Medicare in various amounts; and the amount that was paid in

18  each of those years is as follows:  For 2010, Revelation was

19  paid by Medicare $73,655.96.  For 2011, Medicare paid

20  Revelation Hospice $1,017,605.16.  For 2012, Revelation Hospice

21  was paid by Medicare $3,023,532.72.

22      For 2013, Revelation Hospice was paid by Medicare

23  $2,813,595.29.  And, for 2014, Revelation Hospice was paid

24  $313,488.08.  Dr. Gough's contracted monthly salary was $5,000.

25  Kirkland personally delivered checks to Dr. Gough for $7,000

1   and oftentimes did so twice a month.

2        Those are the basic facts that the Government would prove

3   beyond a reasonable doubt if this case were to proceed to

4   trial, in addition to other items that are set forth in Count 1

5   of the indictment in this case.

6            THE COURT:  All right.  Thank you.

7        Mr. Kirkland, you heard the prosecutor state the evidence

8   that he had to present against you on this particular charge.

9   Did you do what he said you did?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Well, I find that there is a factual

12  basis for you to plead guilty to this charge.  Do you plead

13  guilty or not guilty to Count 1 of the indictment?

14           THE DEFENDANT:  Guilty.

15           THE COURT:  It is the finding of the Court, in the

16  case of the United States of America v. Andre Kirkland, that

17  the defendant is fully competent and capable of entering an

18  informed plea; that the defendant is aware of the nature of the

19  charges and the consequences; that the plea of guilty is a

20  knowing and voluntary plea supported by an independent basis in

21  fact containing each of the essential elements of the offense.

22        Your plea is therefore accepted, and you are now adjudged

23  guilty of that offense.  Your sentencing hearing is set for

24  September the 1st, 2016.

25        Is there any problem with him remaining out on the same

1  bond?

2           MR. FULCHER:  Your Honor, we have absolutely no

3  objection to his remaining out on bond.

4           THE COURT:  Okay.

5       Probation have any concerns?

6           MR. TOLLISON:  None at all, Your Honor.

7           THE COURT:  All right.  He'll remain out on the same

8  bond.  Is there anything to take up at this time?

9           MR. PERCY:  Your Honor, Mr. Kirkland advised me that

10  it is possible that he may need, at some point, between now and

11  his sentencing, to travel outside the state to receive

12  treatment for -- of cancer.  And, so, would the Court, as long

13  as he --

14           THE COURT:  What's the nature of his illness?

15           MR. PERCY:  He's got colon cancer; he has a colostomy

16  bag, and lung cancer.

17           THE COURT:  Okay.  Yes.  If he needs to go

18  anywhere --

19           MR. PERCY:  And, of course, we'd make sure his

20  supervising probation officer is aware.

21           THE COURT:  Just notify the supervision officer.

22       And then you call me and let me know.  And if you need an

23  order or whatever, I'll be glad to -- I'll be glad to approve

24  it or approve it in advance if you need it.

25           MR. PERCY:  Sure.  If Your Honor please, as long

1    as --

2              THE COURT:  Just make that a condition that he can go

3    anywhere within the United States for medical treatment without

4    having to --

5              MR. PERCY:  As long as he notifies his supervising

6    probation.

7              THE COURT:  That be okay, Mr. Tollison?

8              MR. TOLLISON:  Yes, sir.

9              THE COURT:  Let's do that.  Do you understand that,

10   Mr. Kirkland?  Where do you anticipate having to go?

11             THE DEFENDANT:  Cancer Treatment.

12             THE COURT:  Where is that?

13             THE DEFENDANT:  One in Atlanta and one in Tulsa.  So

14   I don't know which one would do lungs.

15             THE COURT:  You just keep your officer informed, and

16   you go ahead --

17             THE DEFENDANT:  Yes.

18             THE COURT:  -- if you need to schedule an appointment

19   or whatever.

20             THE DEFENDANT:  Okay.

21             THE COURT:  All right.

22             MR. PERCY:  Thank you, Your Honor.

23             THE COURT:  Anything else?

24             MR. PERCY:  No, Your Honor.

25             MR. FULCHER:  Nothing from the Government.

1          THE COURT:  All right.  You're now excused.  Court

2 will be in recess.

3               (THE HEARING ENDED AT 2:26 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4                    I, Rita Davis Young, Federal Official Realtime

5    Court Reporter, in and for the United States District Court for

6    the Northern District of Mississippi, do hereby certify that

7    pursuant to Section 753, Title 28, United States Code that the

8    foregoing is a true and correct transcript of the

9    stenographically reported proceedings held in the

10   above-entitled matter; and that the transcript page format is

11   in conformance with the regulations of the Judicial Conference

12   of the United States.

13

14

15                    Dated this 1st day of June, 2016.

16

17

18

19                    /s/ Rita Davis Young
                      RITA DAVIS YOUNG, FCRR, RPR, CSR #1626
20                    Federal Official Court Reporter

21

22

23

24

25